

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

April 2, 2020

**VIA ECF**
Hon. John G. Koeltl
United States District Judge
United States District Court
500 Pearl Street
New York, New York 10007

> Application granted.
> SO ORDERED.
>
> New York, NY   /s/ John G. Koeltl
> April 2, 2020    John G. Koeltl, U.S.D.J.

Re: *International Refugee Assistance Project v. United States Citizenship and Immigration Services et al.,* 19 Civ. 8905 (JGK)

Dear Judge Koeltl:

This Office represents Defendant United States Department of State ("State") in the above referenced Freedom of Information Act ("FOIA") matter. State writes to respectfully request a 60-day stay of the existing deadlines for processing and production of responsive documents for Plaintiff International Refugee Assistance Project ("IRAP" or "Plaintiff")'s FOIA request in light of the COVID-19 pandemic's effect on federal government operations.[1] Pursuant to an agreement between the parties, and as detailed in previous status reports to the Court, State has been processing documents at a rate of 300 pages per month, and producing documents every 4 weeks. *See* ECF No. 17. State made productions on January 6, February 6, and March 6; the next production was supposed to occur on April 6.

After conferring with opposing counsel, it is our understanding that Plaintiff does not consent to the requested stay. While counsel for Plaintiff offered to agree to a shorter stay if State would be willing to work on a *Vaughn* index during that same time period, as the undersigned counsel explained to Plaintiff, given the current COVID-19 pandemic, State needs a longer stay and preparing a *Vaughn* index would require State employees to travel to the office, which is not currently advised. The specific grounds for the requested stay and extension of deadlines are as follows:

1. Due to the COVID-19 pandemic, the Office of Management and Budget ("OMB"), following guidance from the President and the Centers for Disease Control ("CDC"),[2] has

---

[1] The undersigned acknowledges that under I.F of your Honor's Individual Practices, letter-motions, together with any related exhibits, should not exceed 3 pages in length. However, I respectfully request permission to exceed the page limit in light of the necessity to submit a declaration to explain State's current operational limitations due to COVID-19.

[2] *See* The President's Coronavirus Guidelines for America, https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf (last accessed April 1, 2020); Centers for Disease Control and Prevention. "Implementation of Mitigation Strategies

asked agencies to "offer maximum telework flexibilities to all current telework eligible employees, consistent with operational needs of the departments and agencies as determined by their heads." Decl. of Eric F. Stein ¶ 5 (March 27, 2020), attached as Exhibit A. On March 17, 2020, the OMB issued a memorandum to the heads of all departments and agencies with the subject line "Federal Agency Operational Alignment to Slow the Spread of Coronavirus (COVID-19)." *Id.* ¶ 6. The OMB memorandum directed Executive Branch agencies to "[r]educe and re-prioritize non-mission-critical services to free up capacity for critical services," to "[m]aximize telework across the nation for the Federal workforce," and to "immediately adjust operations and services to minimize face-to-face interactions." *Id.* ¶ 8.

2. The State Department Office of Information Programs and Services ("IPS") is responsible for processing and producing non-exempt records in response to Plaintiff's FOIA request. IPS employs retired foreign service officers (retired annuitants or "REAs") to review documents in response to FOIA requests. REAs are no longer able to access their State Department offices for two reasons. First, the processing of FOIA cases is not a mission-critical function, and it does not fit within the exceptions noted in the most recent OMB Circular. In addition, because REAs are retired Foreign Service Officers, many of them are within the age groups identified by the CDC as being at higher risk for serious illness from COVID-19. Accordingly, effective March 19, 2020, IPS paused the scheduling of all REAs working in Department offices for the next several weeks. *Id*. ¶¶ 11-12.

3. The vast majority of REAs are not telework-ready. State estimates there is a 96% reduction in REA availability. *Id*. ¶ 13. Even if State were to increase its teleworking, the REAs assigned to this case could not process the remaining records remotely because State is processing the records for this case in a document review system called FREEDOMS 2. *Id*. ¶¶ 14-15. The FREEDOMS 2 system is operated exclusively on a Department classified computer network, ClassNet, and therefore, is not remotely accessible. *Id*. ¶¶ 16-17.

4. In addition, prior to release of any records, IPS employees must consult with other Department components and components of the executive branch. *Id*. ¶¶ 18-19. IPS has been informed that changes in staffing patterns as a result of the COVID-19 pandemic have made it difficult for other executive branch components to perform such consultations. *Id*.

For these reasons, State respectfully requests that the Court stay the current production deadlines for 60 days, and require the parties to file a joint status report by June 1, 2020, addressing State's ability to continue processing Plaintiff's FOIA request.

I thank the Court for its consideration of this request.

---

for Communities with Local COVID-19 Transmission, https://www.cdc.gov/coronavirus/2019-ncov/downloads/community-mitigation-strategy.pdf (last accessed April 1, 2020).

        Respectfully,

        GEOFFREY S. BERMAN
        United States Attorney

By:     */s/ Rebecca R. Friedman*
        REBECCA R. FRIEDMAN
        Assistant United States Attorney
        Tel: (212) 637-2614
        Fax: (212) 637-2686

cc: Counsel of Record (via ECF)

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| INTERNATIONAL REFUGEE ASSISTANCE PROJECT, INC.<br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF STATE,<br>Defendant. | Civ. No. 19-8905 |

## DECLARATION OF ERIC F. STEIN

Pursuant to 28 U.S.C. § 1746, I, Eric F. Stein, declare and state as follows:

1. I am the Director of the Office of Information Programs and Services ("IPS") of the United States Department of State (the "Department" or "State") and have served in this capacity since January 22, 2017. Previously, I served as the Acting Director since October 16, 2016, and as the Acting Co-Director since March 21, 2016. I am the State official immediately responsible for responding to requests for records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, and other records access provisions. As the Director of IPS, I have original classification authority and am authorized to classify and declassify national security information. Prior to serving in my current capacity, I worked directly for State's Deputy Assistant Secretary ("DAS") for Global Information Services ("GIS") and served as a senior advisor and deputy to the DAS on all issues related to GIS offices and programs, which include IPS.

2. I am familiar with the efforts of Department personnel to process the FOIA request that is the subject of this litigation, and I am in charge of coordinating the agency's

1

search and processing efforts with respect to that request. I make the following statements based upon my personal knowledge, which in turn is based upon information furnished to me in the course of my official duties.

3. The purpose of this declaration is to describe the ways in which the Department's FOIA processing capabilities are being seriously compromised by the COVID-19 pandemic. In short, because of the grave impact of the COVID-19 pandemic that has limited Executive Branch work in the office workplace to mission-critical functions, the inaccessibility from outside of Department worksites of the systems the Department uses to process FOIA cases, and the Department's paramount concern for the safety of its employees, the Department is unable to continue processing documents in response to the request in this case. Accordingly, the Department respectfully seeks a stay of the existing production and reporting deadlines in this case.

## I. Executive Branch Guidance

4. On March 13, 2020, President Trump declared that the COVID-19 outbreak in the United States constitutes a national emergency.

5. The United States Office of Personnel Management ("OPM") has been issuing guidance to address how the Federal Government can implement measures to protect its workforce and the American public. Specifically, on March 7, 2020, OPM recommended the "incorporation of telework and "social distancing" in COOP [Continuity of Operations] and emergency planning [to] allow the Federal Government to continue functioning efficiently and effectively, while ensuring the health and safety of employees." Further, on March 15, 2020, the Acting Director of the Office of Management and Budget ("OMB") issued guidance to Federal agencies in the National Capital Region to implement maximum telework flexibilities. OMB's

guidance asked agencies "to offer maximum telework flexibilities to all current telework eligible employees, consistent with operational needs of the departments and agencies as determined by their heads."

6. On March 17, 2020, OMB issued a memorandum to the heads of all departments and agencies with the subject line "Federal Agency Operational Alignment to Slow the Spread of Coronavirus (COVID-19)."

7. The OMB memorandum recognized that Executive Branch agencies are working "to balance the needs of mission-critical work and greater social distancing," and accordingly directed Executive Branch agencies to "take appropriate steps to prioritize all resources to slow the transmission of COVID-19, while ensuring our mission-critical activities continue."

8. The OMB memorandum further directed Executive Branch agencies to "[r]educe and re-prioritize non-mission-critical services to free up capacity for critical services," to "[m]aximize telework across the nation for the Federal workforce," and to "immediately adjust operations and services to minimize face-to-face interactions."

9. The Department is implementing these guidelines to protect its employees and their communities, and to ensure that it can continue to perform mission-critical functions during this national emergency.

## II. Staffing

10. IPS currently employs retired Foreign Service Officers (Retired Annuitants or "REAs") to review and process documents in response to FOIA requests to leverage these individuals' knowledge of the Department.

11. REAs are an indispensable part of the FOIA litigation process. In each FOIA litigation case, IPS assigns documents to an REA or a team of REAs with appropriate clearance

3

and subject matter expertise to process a particular set of documents. REAs perform a line-by-line review of each document to determine whether the document is responsive to the request, whether it contains any classified information, information subject to one of the nine FOIA statutory exemptions, of information belonging to other equity holders, such as other federal agencies and third parties. During this process, REAs consult other Department employees (including, for example, employees in regional bureaus or attorneys) as appropriate. These consultations often occur more than once in the review process and inform the Department's determination about the applicability of any FOIA exemption. Additionally, if REAs determine that a document originated with the Department, but contains another federal agency's information (or "equities"), an IPS employee will send that document to the relevant federal agency for consultation. After completing the internal and external consultation processes, REAs redact any information pursuant to FOIA exemptions and mark documents that the Department will release in full or in part with the required stamps, which indicate the release determinations and FOIA exemptions applied. If REAs completing this process are relatively inexperienced, their work undergoes a second-level review by a senior reviewer—also an REA—to ensure that the original reviewer properly applied FOIA exemptions and consulted with relevant Department bureaus and federal agencies. As the primary and secondary reviewers of potentially responsive documents, REAs are an indispensable part of the FOIA litigation process.

12.   REAs are no longer able to access their State Department offices for two reasons. First, the processing of FOIA cases is not a mission-critical function, and it does not fit within the mission-critical exceptions noted in the most recent OMB Circular (i.e., "Exceptions may be needed when continued operations and services are necessary to protect public health and safety,

4

including law enforcement and criminal-justice functions."). In addition, because REAs are retired Foreign Service Officers, many of them are within the age groups identified by the CDC as being at higher risk for serious illness from COVID-19. In light of Executive Branch guidance, my paramount concern for the safety of IPS employees, and the non-mission-critical determination, I have paused the scheduling of all REAs working in Department offices for the next several weeks, effective March 19, 2020.

13. REAs are telework-eligible, meaning that they are eligible to enter into scheduled or situational telework agreements with the Department. However, at the time of this declaration, very few REAs are telework-ready; most do not have current, approved telework agreements, do not have the technological capability to telework, or have chosen not to telework. REAs cannot be compelled to telework.[1]

14. However, even if we were are able to increase the number of telework-ready REAs, those REAs would be unable to advance any work on this case due to the fact that the potentially responsive documents reside in a software system maintained on a classified network that cannot be accessed remotely.

### III. Document Review Systems

15. The potentially responsive records that have been collected for this FOIA case are stored and processed in a document review system known as "FREEDOMS 2." The FREEDOMS 2 system is operated exclusively on a Department classified computer network, ClassNet.

---

[1] We currently estimate that there is a 96% reduction in REA availability. I am currently working to increase the number of telework-ready REAs, including by encouraging REAs to submit requests for telework agreements and by moving those requests through the process as quickly as practicable. At this time, very few REAs are telework-ready.

16. ClassNet is accessible only from a Department workplace. Thus, it is inaccessible to any Department employees who are teleworking or otherwise not physically present at a Department worksite.

17. The Department is in the process of transferring all of its FOIA cases from FREEDOMS 2 to a new document review platform, FOIAXpress. Nevertheless, cases currently in FREEDOMS 2, like this case, will continue to be processed on a classified network after the transfer, even though FOIAXpress is capable of processing documents on both classified and unclassified networks. This is because classified documents associated with a case in FREEDOMS 2 are intermingled with unclassified documents, and there is no efficient way to separate classified from unclassified documents before a case is transferred to FOIAXpress. Accordingly, even after the documents for this case are transferred to FOIAXpress, they will be accessible only on ClassNet and therefore will be inaccessible to Department employees who are teleworking or are otherwise not physically present at a Department worksite.

### IV. Consultations

18. As noted above, the review process for many documents necessitates consultations with other Department components. IPS has been informed by several Department components that, for the foreseeable future, changes in staffing patterns in response to the COVID-19 pandemic will make it difficult for them to respond to FOIA consultations in a timely manner.

19. In addition, the review process for many documents necessitates consultations with other components of the Executive Branch. Much like the internal Department components, other components of the Executive Branch have informed IPS that, for the

foreseeable future, changes in staffing patterns in response to the COVID-19 pandemic may make it difficult for them to respond to FOIA consultations in a timely manner.

20.     If IPS does not receive consultation responses from internal Department components or external Executive Branch components, per State Department FOIA procedures, the Department does not release documents in response to FOIA requests.

### V. Conclusion

21.     The Department is committed to complying with all court orders and meeting all of its FOIA demands to the best of its ability, and it will continue limited operations to process FOIA requests to the extent practicable under these extraordinary circumstances. However, because of the grave impact of the COVID-19 pandemic described herein, the Department's ability to do so is severely compromised and the Department therefore respectfully seeks a stay of the existing production and reporting deadlines in this case.

***

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 27th day of March 2020, Washington, D.C.

Eric F. Stein